Patricia A. Lotz, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued June 10, 1977, before Judges WILKINSON, JR., MENCER and ROGERS, sitting as a panel of three.

*Lynn Erickson Stock,* for petitioner.

*Charles G. Hasson,* Assistant Attorney General, with him *Sydney Reuben,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for respondent.

OPINION BY JUDGE WILKINSON, JR., July 22, 1977:

Claimant was discharged on April 25, 1975, after working over 15 years (four years for the present management) for allegedly making derogatory remarks about the general manager and other management personnel at the radio station where she worked. Claimant applied for unemployment compensation benefits but was found ineligible by the Bureau of Employment Security under Section 402(e) (wilful misconduct) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e). Claimant appealed this decision and the referee reversed finding no direct non-hearsay evidence of the claimant's wilful misconduct. The employer then appealed this decision and the Unemployment Compensation Board of Review (Board) remanded for a further hearing before a Board Hearing Officer. At this remand hearing the employer presented the testimony of witnesses, co-employees of the claimant. On the basis of this testimony the Board reversed the decision of the referee and denied benefits.

The Board found the following:

1. Claimant was last employed by Eastern Radio Corporation, Berkshire Towers, Reading, Pennsylvania in office management at $140.00 per week for 15 years and four months. Her last day of work was April 25, 1975.

2. The claimant, in conversation with fellow employees on numerous occasions, referred to the employer's general manager in a derogatory manner using obscene descriptive terms.

3. The claimant, in conversation with fellow employees on numerous occasions, described the employer's general manager and two other management officers as being dishonest.

4. The claimant was discharged for acts not in the best interest of the employer.

Claimant argues that there is not substantial evidence to support the findings of fact and conclusion of law of the Board. After a careful review of the record, we disagree and affirm.

At the first hearing the employer's general manager was present and gave testimony regarding the allegations which were the basis for his decision to terminate the claimant. This testimony was objected to and excluded by the referee. It was hearsay on the merits of claimant's conduct, but was not hearsay as to the reason she was discharged. To buttress his statements, the general manager offered letters allegedly written by co-employees of claimant concerning claimant's conduct at work. These letters were properly objected to and excluded by the referee. However, these letters were made a part of the record.

At the remand hearing before a Board Hearing Officer, four witnesses, co-employees of claimant, testified as to her conduct on the job. Each one of the four had written letters which are part of the record.[1] The substance of the testimony of the four witnesses was that claimant was not happy with the present management and particularly disliked the general manager, did not like the manner in which the radio station was

---

[1] None of the letters was ever formally offered into evidence and thus, no ruling was made on their admission. Of the four witnesses, three mentioned the letters during their direct examination. The most damaging letter, that of Mrs. McCouch, is never identified by Mrs. McCouch or offered into evidence and cannot be used by the Board as a basis for its decision. However, Mrs. McCouch's direct testimony supports the findings.

run, was critical of statements made by the general manager, was overworked and underpaid and specifically critical about the general manager in comparison with the prior general manager.[2] One of the four witnesses testified to specific obscene remarks, gestures, and comments referring to the honesty of management she had heard the claimant make when referring to the general manager. This testimony is supportive of the general manager's allegations and the appellee's findings. The other witnesses' testimony, while not as unattractively specific, does form the basis for concluding that what this witness testified to specifically occurred on several occasions. Under these circumstances, it is completely unrealistic for claimant to argue that the witness failed to state "whether the physical gestures with her finger whenever his back was turned" were complimentary or derogatory.

The test for "wilful misconduct" set forth by Judge MENCER in *Fields v. Unemployment Compensation Board of Review*, 7 Pa. Commonwealth Ct. 200, 203, 300 A.2d 310, 311 (1973) continues to be valid: Does the conduct of claimant indicate "*a disregard of the standards of behavior which the employer has the right to expect of his employee. . . .*" (Italics in original.) Here certainly the above quoted testimony qualifies as wilful misconduct under the *Fields* test.

There is direct testimony that claimant's conduct had an adverse effect on the other employees. One witness testified:

W: Okay, the short time that I worked there, I saw and heard but like I say, I am in and out

---

[2] One witness testified that claimant vilified the general manager, when the employer's attorney asked the witness to give an example of vilify, the witness stated:

W: Well I can't remember word for word.

EL: Well as close as you can.

W: Well all I know is that, she was very unhappy with him, unhappy with the situation.

of the office so just a little bit that I did hear was vilifying, condemning, disparaging her employer to the point I think it got me so upset that one day I voiced my personal opinion that if she didn't like her position then she should just quit her job.

Judge KRAMER, in *Unemployment Compensation Board of Review v. Kullen,* 21 Pa. Commonwealth Ct. 488, 490, 346 A.2d 926, 927 (1975), appropriately states:

An employe's poor attitude must be coupled with some specific conduct adverse to his employer's interest, or result in some identifiable detriment to the employer before a conclusion of wilful misconduct is justified.

Certainly the specific conduct described by the witness first referred to above is "adverse" to the employer's interest.

Accordingly, we will enter the following

ORDER

Now, July 22, 1977, the order of the Unemployment Compensation Board of Review, Decision No. B-132294, dated June 29, 1976, denying benefits to Patricia A. Lotz, is affirmed.